UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY BOWLES, JR.,<br><br>Plaintiff,<br><br>v.<br><br>CONSTELLATION BRANDS, INC., *et al.*<br><br>Defendants. | No. 1:19-cv-00582-DAD-SKO<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND UNDER 28 U.S.C. § 1447(C) AND DENYING DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) and 21<br><br>(Doc. Nos. 4, 9) |

Plaintiff Jerry Bowles, Jr. initiated this action in the Fresno Superior Court against his former employer, Constellation Brands, Inc. dba Mission Bell Winery ("Constellation"), and his former supervisor there, Ken Putnam ("Putnam") (collectively, "defendants"), asserting claims for defamation and wrongful termination. (Doc. No. 1, Compl.) Although plaintiff and defendant Putnam are citizens of California, defendants removed the action to this federal court on May 2, 2019, based on the theory that defendant Putnam is fraudulently joined and that, therefore, this court has diversity jurisdiction over the action.[1] (Doc. No. 1.) Four days later, defendants also brought a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), asking the court to dismiss defendant Putnam from the action on the grounds that he had been fraudulently joined merely for the purpose of defeating diversity jurisdiction.[2] (Doc. No. 4 at 1-2.) Plaintiff timely

---

[1] The complaint pleads no claims presenting a federal question.

[2] Plaintiff did not file an opposition to defendants' motion to dismiss.

1

filed a motion to remand on May 22, 2019. (Doc. No. 9); *see* 28 U.S.C. § 1447 (affording plaintiff 30 days to remand from the date of removal). Therein plaintiff argues that defendant Putnam is properly joined and that diversity jurisdiction is therefore lacking in this court. (Doc. No. 9 at ¶ 25.) Defendants opposed plaintiff's motion to remand on June 18, 2019 and plaintiff replied on June 24, 2019. (Doc. Nos. 11, 12.)

A hearing on the motions was held on July 2, 2019. Attorney Milton Greg Mullanax appeared telephonically on behalf of plaintiff, and attorney Gabriel Rubin appeared telephonically on behalf of defendants. Having considered the parties' briefs and oral arguments, and for the reasons set forth below, the court will grant plaintiff's motion to remand and deny defendants' motion to dismiss as having been rendered moot.

**FACTUAL BACKGROUND**

Plaintiff's complaint asserts three causes of action under California law: (1) defamation, (2) racial discrimination in violation of California Fair Employment and Housing Act (FEHA), and (3) wrongful termination in violation of public policy. (Doc. No. 1, Compl.) Only the defamation claim is asserted against defendant Putnam and it is that claim that is at the crux of the pending motions. Plaintiff's defamation claim is based on his allegation that defendants "accused plaintiff of failing to ensure the safety of other employees because, defendants falsely claim, plaintiff did not verify that the workers exited the tank safely." (*Id.* at ¶ 17.)

Plaintiff worked for defendants from 1989 until he was terminated in March 2018. (*Id.* at ¶¶ 10, 14.) In his role as a sanitation foreman, his responsibilities included supervising other workers tasked with cleaning out tanks[3], verifying that those workers safely exited the tank, and documenting that verification. (*Id.* at ¶¶ 11-12.) The incident at issue in this action occurred on January 26, 2018, when, according to defendants' investigation, plaintiff neglected to verify that other workers had exited a tank and left the them inside that tank. (*Id.* at ¶ 14.) Plaintiff claims that although he "forgot" to document his verification, he in fact confirmed that the workers

/////

---

[3] Although not specified by the parties, the tanks referred to were apparently large wine storage tanks.

2

exited the tank, had talked to the workers in the break room, and told them not to get back into the tank. (*Id.* at ¶¶ 12-13.)

Plaintiff alleges that on March 16, 2018, defendants terminated his employment based on their fabricated investigation and false accusation that he had failed to verify that the workers had exited the tank on January 26, 2018. (*Id.* at ¶ 14.) Plaintiff claims that defendants' entire investigation was manufactured to conceal the fact that he was terminated because he was African American. (*Id.* at ¶ 29.) Thus, plaintiff avers that any communication to third parties about his termination based on the findings of defendants' investigation is defamatory. (*Id.* at ¶¶ 17-24.)

## LEGAL STANDARD FOR REMAND

For reasons that will become clear, the court will first consider plaintiff's motion to remand this action to state court. "A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Under 28 U.S.C. § 1447(c), the court *must* remand a case "any time before final judgment it appears that [it] lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "In civil cases, subject matter jurisdiction is generally conferred upon federal district courts either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331." *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005). As relevant here, diversity jurisdiction requires the court to "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332. Whether diversity jurisdiction exists "depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (internal quotation marks and citation omitted).

Courts must "strictly construe the removal statute against removal jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citations omitted). "Subject matter jurisdiction may not be waived, and, indeed, we have held that the district court must remand if it lacks jurisdiction."

*Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) (citation omitted).

## ANALYSIS

Defendants' notice of removal is based solely on diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. No. 1 at ¶ I.1.) "Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). As asserted in defendants' notice of removal and pled in plaintiff's complaint, plaintiff and defendant Putnam are citizens of California, while Constellation is a citizen of a different state. (Doc. No. 1 at ¶¶ V.10, 12, VI.15-17; Compl. at ¶¶ 1, 3.) According to these allegations and on first appearance, the court lacks diversity jurisdiction over this case because diversity of citizenship is not complete. Defendants, however, contend that defendant Putnam is fraudulently joined in this action and should be disregarded for purposes of this court's exercise of its diversity jurisdiction. (Doc. No. 1 at ¶¶ 15-17.) "In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare*, 889 F.3d at 548.

In assessing fraudulent joinder, the court is mindful that "[s]tate courts enjoy a 'deeply rooted presumption' that they have jurisdiction to adjudicate all claims arising under state *or* federal law." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018) (emphasis added). "By contrast, [w]e presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Id.* (internal quotation marks omitted).

**A.     Fraudulent Joinder**

The "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914). A fraudulently joined defendant has no real connection to an action where (1) there is "actual fraud in the pleading of jurisdictional facts" or (2) the plaintiff is unable "to establish a cause of action against the non-diverse party in state court." *Grancare*, 889 F.3d at 548. In addition, the fraudulent joinder must be "obvious according to the settled rules of the state." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). The purpose of the

rule prohibiting fraudulent joinder is "to strike a balance between the plaintiff's right to select a particular forum and the defendant's right to remove the case to federal court." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011).

Here, defendants argue that plaintiff is unable to state a cognizable cause of action under state law against the non-diverse party, defendant Putnam. (Doc. No. 11 at 2-4.) To prevail on this argument, defendants must show that plaintiff *could not* "state a reasonable or colorable" defamation claim against defendant Putnam "under the applicable substantive law." *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016). "[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court *must* find that the joinder was proper and remand the case to the state court." *Grancare*, 889 F.3d at 548 (emphasis added) (internal quotation marks and citation omitted); *see also Pool v. F. Hoffman-LaRoche, Ltd.*, 386 F. Supp.3d 1202, 1209–10, 1215 (N.D. Cal. 2019). Despite this governing legal standard, defendants understate their burden of establishing fraudulent joinder by arguing that plaintiff's motion to remand "will necessarily rise or fall depending on the outcome" of their motion to dismiss under Rule 12(b)(6). (Doc. No. 11 at 1.)

Defendants' actual burden is far heavier, as the Ninth Circuit has explained:

> the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent. A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined.

*Grancare*, 889 F.3d at 549. "If a defendant cannot withstand a Rule 12(b)(6) motion, the fraudulent [joinder] inquiry does not end there." *Id.* at 550. "For example, the district court must also consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.* Of course, defendants are "entitled to present the facts showing the joinder to be fraudulent." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). However, fraudulent joinder "must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Here, defendants have presented no evidence in support of their opposition to plaintiff's motion for remand on the

5

grounds that defendant Putnam has been fraudulently joined. Therefore, the court's analysis is necessarily limited to the allegations of plaintiff's complaint. *See generally Grancare*, 889 F.3d at 549 ("in many cases, the complaint will be the most helpful guide in determining whether a defendant has been fraudulently joined").

Under the Ninth Circuit's decision in *Grancare*, the analysis of whether defendant Putnam is fraudulently joined necessarily turns first on the legal sufficiency of plaintiff's defamation claim; put differently, the analysis under Rule 12(b)(6) is essentially subsumed in the consideration of plaintiff's motion to remand. Accordingly, the court will first address plaintiff's motion to remand and the sufficiency of plaintiff's defamation claim against defendant Putnam.

**B.     The Sufficiency of the Defamation Claim against Defendant Putnam**

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). That is, "[a]ll factual allegations in the complaint are accepted as true, and the pleadings construed in the light most favorable to the nonmoving party." *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1018 (9th Cir. 2014) (internal quotation marks and citation omitted). A legally sufficient claim must be "plausible on its face," meaning there are sufficient facts alleged to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a cognizable claim "does not need detailed factual allegations," "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In California, defamation is a claim based on an injury to one's reputation; "the injury may occur by means of libel or slander." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003) (citing Cal. Civ. Code § 44).[4] Under California law:

> The tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage. The publication

---

[4] Whereas libel is "a false and unprivileged publication" by written communication, slander is a "false and unprivileged publication" that is "orally uttered." Cal. Civ. Code §§ 45–46.

6

> must be an intentional publication of a statement of fact. The defamatory statement must specifically refer to, or be of and concerning, the plaintiff.

*Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1007 (2018) (internal quotation marks and citations omitted).[5] "Each publication ordinarily gives rise to a new cause of action for defamation." *Shively*, 31 Cal. 4th at 1242 (citations omitted).

Defendants argue that plaintiff's complaint fails to sufficiently allege the elements of publication, falsity, and that the alleged defamatory statement is not privileged. (Doc. Nos. 4 at 5-8; 11 at 2-4.) As explained below, the court agrees with defendants' first and third assertions, but not the second.

### 1. Publication Requirement

California law provides as follows:

> Publication, which may be written or oral, is defined as a communication to some third person who understands *both* the defamatory meaning of the statement and its application to the person to whom reference is made. Publication need not be to the public or a large group; communication to a single individual is sufficient.

*Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000) (emphasis added) (citations omitted).

/////

---

[5] California has a "strong judicial disfavor for libel suits based on communications in employment performance reviews." *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 964 (1993). As the California Court of Appeal has explained:

> In light of the multitude of laws designed to protect the employee from oppressive employment practices, evaluations serve the important business purpose of documenting the employer's hiring, promotion, discipline and firing practices. Moreover, the laudable practice of evaluating employees is to be encouraged for other important reasons. The performance review is a vehicle for informing the employee of what management expects, how the employee measures up, and what he or she needs to do to obtain wage increases, promotions or other recognition. Thus, the primary recipient and beneficiary of the communication is the employee. Tangential beneficiaries are ordinarily, as in the case here, all part of a management group with a common interest, i.e., the efficient running of the business.

*Id.*

Here, plaintiff alleges that defendant Putnam caused "excessive and unsolicited internal and external publications of defamation of and concerning plaintiff to third persons and to the community." (Doc. No. 1, Compl. at ¶ 19.) "Those third person(s) to whom these defendants published this defamation are believed to include, but are not limited to, other agents and employees of defendants, and each of them, and the community, all of whom are known to defendants, and each of them, but *unknown* at this time to plaintiff." (*Id.* at ¶ 21) (emphasis added).

For a complaint to survive a motion to dismiss brought under Rule 12(b)(6), "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Here, plaintiff's complaint fails to articulate the nature of the alleged publication. Critically, if plaintiff does not know who the third party or parties are, how does plaintiff know such publication was even made? Plaintiff's complaint does not address this question.[6] Moreover, plaintiff's counsel conceded at the hearing on the pending motions that

---

[6] At the hearing, plaintiff cited *Live Oak Publ'g Co. v. Cohagan*, 234 Cal. App. 3d 1277 (1991), for the proposition that if he was coerced to tell prospective employers why he was terminated because defendants manufactured his termination based on racial animus, he could bring a cognizable coerced self-publication claim. This argument was not raised in plaintiff's written opposition. The court "need not consider arguments raised for the first time in a reply brief," let alone one that was first raised at a hearing after briefing had closed. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). More importantly, "[f]actual allegations not made in the complaint cannot be considered for purposes of a 12(b)(6) motion to dismiss." *Schneider v. Cal. Dept. of Corrs.*, 151 F.3d 1194, 1198 n.1 (9th Cir. 1998). Here, plaintiff made no mention of a coerced self-publication claim in his complaint. Finally, even if this court did consider such a claim, it is insufficiently pled. The three elements of a coerced self-publication claim in California are: "1. Defendants made the statement to plaintiff; 2. Plaintiff was under strong pressure to communicate defendants' statement to a third person; and 3. When defendants made the statement, they should have known that plaintiff would be under strong pressure to communicate them to a third person." CACI 1708 (citing *Davis v. Consol. Freightways*, 29 Cal. App. 4th 354, 373 (1994); *Live Oak*, 234 Cal. App. 3d at 1284); *but see Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1084 (S.D. Cal. 2017) (listing only two elements). Coerced self-publication claims have been recognized by district courts. *See Shepherd v. Kohl's Dep't Stores, Inc.*, No. 1:14-cv-01901-DAD-BAM, 2016 WL 1626950, at *2 (E.D. Cal. Apr. 25, 2016); *Bowen v. M. Caratan, Inc.*, 142 F. Supp. 3d 1007, 1034 (E.D. Cal. 2015). However, as noted, plaintiff has failed to allege to whom and how he was coerced into republishing the defamatory statement. *See, e.g.*, *Xi Lin v. Circuit City, Inc.*, 106 F.3d 412 (9th Cir. 1996) (holding that the plaintiff "has not demonstrated that a strong compulsion to publish the allegedly defamatory statements existed"). Pleading in a conclusory

8

plaintiff is not alleging that defendant Putnam made the allegedly defamatory statement. (*But see* Doc. No. 1, Compl. at ¶ 20) ("Defendants' publications are outrageous, negligent, reckless, intentional, and maliciously published and republished by defendants, and each of them."). Aside from these apparent pleading deficiencies, the above allegations of plaintiff's complaint are wholly conclusory. The court cannot "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks and citation omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1149 (9th Cir. 2019) (internal quotation marks and citation omitted).

For these reasons, the court concludes that plaintiff has failed to sufficiently allege the element of publication.

2. <u>Falsity Requirement</u>

"It is an essential element of defamation that the publication be of a false statement of fact rather than opinion." *Ringler*, 80 Cal. App. 4th at 1181 (citation omitted). "Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *Dickinson v. Cosby*, 17 Cal. App. 5th 655, 685 (2017) (citation omitted). "Statements do not imply a provably false factual assertion and thus cannot form the basis of a defamation action if they cannot reasonably [be] interpreted as stating actual facts about an individual. Thus, rhetorical hyperbole, vigorous epithet[s], lusty and imaginative expression[s] of . . . contempt, and language used in a loose, figurative sense have all been accorded constitutional protection." *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809 (2002) (internal quotation marks and citation omitted). But "[s]tatements of opinion do not

---

manner that one felt compelled to self-publish a defamatory statement to prospective employers is insufficient, particularly where the plaintiff could provide a non-defamatory statement about his past work experience. *See, e.g.*, *Estrada v. Wal-Mart Stores, Inc.*, 2016 WL 5846977, at *10 (N.D. Cal. Oct. 6, 2016) (holding that "assertion—that she was compelled to tell prospective employers, family, and friends—finds no support in the FAC"). To the extent plaintiff is alleging a likely future republication, that would trigger Article III standing concerns as will be discussed in footnote 9, below.

enjoy blanket protection," for "[s]tatements of opinion that imply a false assertion of fact are actionable." *Dickinson*, 17 Cal. App. 5th at 685 (internal quotation marks and citation omitted). "Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 691 (internal quotation marks and citations omitted).

Defendants argue that the statement allegedly made by defendant Putnam is a nonactionable opinion. (Doc. No. 4 at 6-7.) "The crucial question of whether challenged statements convey the *requisite factual imputation* is ordinarily a question of law for the court." *Dickinson*, 17 Cal. App. 5th at 686 (emphasis added) (internal quotation marks and citation omitted). The California Court of Appeal has held that while communications of an "employer's perceptions about an employee's efforts, attitude, performance, potential or worth to the enterprise," even if objectively false, are considered opinions, statements concerning an employee's criminal conduct or lack of "honesty, integrity, competence, or that he had reprehensible personal characteristics" may be subject to a defamation claim if they are false. *Gould v. Maryland Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1153–54 (1995). Thus,

> To make this determination, we apply a totality of the circumstances test. First, we examine the language of the statement itself, to determine whether the words are understood in a defamatory sense. Second, we examine the context in which the statement was made.

*Dickinson*, 17 Cal. App. 5th at 686 (citation omitted); *see also Hawran v. Hixson*, 209 Cal. App. 4th 256, 290 (2012) ("Defamation actions cannot be based on snippets taken out of context.").

Looking first at the language of the alleged statements, plaintiff alleges that "[t]hese false defamatory statements included express or implied accusations that plaintiff failed to ensure the safety of his workers by leaving the premises without making sure the workers safely exited the tank," that plaintiff was "ignoring his safety responsibilities," and was an "incompetent, dishonest and a poor employee." (Doc. No. 1, Compl. at ¶¶ 19-20.) According to plaintiff, these statements have been or would be made in the context of publishing them to his prospective employers. (*Id.* at ¶¶ 19, 24.) In the court's view, these statements are not opinions that are "'broad, unfocused and wholly subjective comment,'" such as stating that "plaintiff was a 'shady practitioner',

'crook', or 'crooked politician'." *Copp v. Paxton*, 45 Cal. App. 4th 829, 837 (1996). Rather, the alleged statements at issue here are more analogous to something being "factually specific," "earnest" and "'serious' in tone," and in which the alleged speaker "'represent[ed] himself as 'unbiased,' 'having specialized' or 'first-hand experience,'" or of "'hav[ing] personally witnessed . . . abhorrent behavior,'" all of which indicate an actionable factual statement. *See ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624 (2017) (internal quotation marks and citations omitted); *see also Del Junco v. Hufnagel*, 150 Cal. App. 4th 789, 798 (2007) (holding that accusations about "a physician of being untrained and lacking the proper credentials are" "statements of fact.").

Instructive in this regard is the decision in *Wong v. Jing*, 189 Cal. App. 4th 1354 (2010), in which the California Court of Appeal found the "assertion that [the plaintiff] worked so fast that she failed to find several cavities thus had mis- or under-diagnosed the condition of boys['] teeth" was false and defamatory. *Wong*, 189 Cal. App. 4th at 1374. Likewise, in *Rodriguez v. N. Am. Aviation, Inc.*, 252 Cal. App. 2d 889 (1967), the state appellate court held that statements claiming plaintiff "was 'not a competent engineer' and was 'a traitor to the company'" were defamatory *per se*. *Rodriguez*, 252 Cal. App. 2d at 894; *cf. Gould*, 31 Cal. App. 4th at 1154 (holding that, though more specific and in a different context than presented here, "accusation [the plaintiff] made a $100,000 mistake in estimating an MSI bid" was actionable because it commented on the plaintiff's "incompetence in his trade."). *But see Gould*, 31 Cal. App. 4th at 1154 (holding that accusation that the plaintiff had "poor performance" was "clearly a statement of opinion"). Putting "itself in the place of an average reader," and reading the statements in light most favorable to plaintiff, the undersigned concludes that "the natural and probable effect of the" alleged statements here is "a provably false assertion of fact." *ZL Techs.*, 13 Cal. App. 5th at 589, 624. Accepting as true plaintiff's allegation that defendants falsely published statements claiming that plaintiff ignored "his safety responsibilities," (Doc. No. 1, Compl. at ¶ 20), the court concludes that the alleged statements sufficiently go to plaintiff's competency and are potentially actionable.

/////

11

### 3. Common-Interest Privilege Defense

Defendants next contend that the alleged statements are privileged under California Civil Code § 47(c). (Doc. Nos. 4 at 7–8; 11 at 3–4.) The so–called "common-interest privilege," *see Lundquist v. Reusser*, 7 Cal. 4th 1193, 1196 (1994); *Bikkina v. Mahadevan*, 241 Cal. App. 4th 70, 90 (2015), is a conditional privilege. "The privilege is provided to protect and to further the particular interests and activities safeguarded by the privilege. Those interests and activities are deemed to outweigh the correlative injury caused by their expression that is otherwise protected by the law of tort." *Deaile v. Gen. Tel. Co. of California*, 40 Cal. App. 3d 841, 849 (1974).

By statute, California law provides that a "privileged publication" is one made "without malice[ ] to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." Cal. Civ. Code § 47(c). Such privilege covers "communication[s] concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant."[7] *Id.* (alteration in original).

California courts have emphasized that this privilege

> applies where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest, which must be something other than mere general or idle curiosity, such as where the parties to the communication share a contractual, business[,] or similar relationship or [where] the defendant is protecting his [or her] own pecuniary interest. Communications made in a commercial setting relating to the *conduct of an employee* have been held to fall squarely within the qualified privilege for communications to interested persons.

---

[7] The California Legislature added the condition "based upon credible evidence" to communications made as a requisite for invoking the common-interest privilege in order "to bar any argument that in the employment reference context, the protection of the interest involved may make it reasonable to report mere rumors or unfounded gossip." *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1375 (2003).

*Cornell v. Berkeley Tennis Club*, 18 Cal. App. 5th 908, 949 (2017) (internal quotation marks and citations omitted). "[D]efendant generally bears the initial burden of establishing that the statement in question was made on a privileged occasion, and thereafter the burden shifts to plaintiff to establish that the statement was made with malice." *Taus v. Loftus*, 40 Cal. 4th 683, 721 (2007).

Here, plaintiff alleges that defendant Putnam made "excessive and unsolicited internal and external publications of defamation of and concerning plaintiff to third persons and to the community," but represents that he does not know who the third persons are at this time.[8] (Doc. No. 1, Compl. at ¶¶ 19, 21.) As previously noted, plaintiff concedes that he is not alleging that defendants published the alleged defamatory statement to plaintiff's potential employers. (*See* Section B.1, above.) Despite this lack of information, plaintiff speculates that while he "is in search of employment," he "*would* be under a strong presumption to disclose the contents of defendants' defamatory statements that plaintiff lies and ignores worker safety" "when prospective employers inquire about previous employment and why the employment ended."[9]

---

[8] Making unsolicited false statements to prevent a former employee from reemployment is a violation of California Labor Code § 1050, which states that "[a]ny person . . . who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment[ ] is guilty of a misdemeanor." However, because plaintiff has failed to allege sufficient facts regarding the context of any unsolicited false statement and to whom any such statement was made, the court need not further analyze this deficient, conclusory allegation.

[9] Plaintiff's allegations regarding future injury trigger Article III standing concerns. "[A] litigant must demonstrate that [he] has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007) (alteration in original). "Each element of standing *must* be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (emphasis added) (internal quotation marks and citation omitted). Given that plaintiff has not yet suffered the future injury he anticipates, it appears this is "a dispute [which] is not a proper case or controversy" and that the court has "no business deciding it, or expounding the law in the course of doing so." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, ___U.S.___, 137 S. Ct. 1645, 1650 (2017) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). As the Supreme Court has instructed, "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *see also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Notwithstanding the

(Doc. No. 1, Compl. at ¶ 24) (emphasis added.) Plaintiff also generally alleges in his complaint that defendants made defamatory statement concerning his termination to "other agents and employees of defendants." (*Id.* at ¶ 22.)

As defendants point out, (Doc. Nos. 11 at 3; 4 at 7), statements made to other employees about a plaintiff's termination are protected under the common-interest privilege. *See McGrory v. Applied Signal Tech., Inc.*, 212 Cal. App. 4th 1510, 1538 (2013) (the common-interest privilege applies "to statements by management and coworkers to other coworkers explaining why an employer disciplined an employee."); *see, e.g.*, *Arnaud v. Little Caesar Enterprises, Inc.*, No. ED CV 18-01316-DOC (KKx), 2018 WL 4772274, at *5 (C.D. Cal. Oct. 1, 2018) ("an alleged defamatory statement concerning Arnaud's job performance by a human resources employee clearly falls within the statutory privilege."); *Narayan v. Compass Grp. USA, Inc.*, 284 F. Supp. 3d 1076, 1086 (E.D. Cal. 2018) (the common-interest privilege applied because the communications took place between fellow managers who had a common business interest in plaintiff's termination); *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 440 (2007) (holding that the employer's statements to other employees that the plaintiff had been fired for violating the time card policy were protected under common-interest privilege).

Beyond that, "[p]arties in a business or contractual relationship [also] have the requisite 'common interest' for the privilege to apply." *King*, 152 Cal. App. 4th at 440 (second alteration in original). This includes "communications made by current or former employers to prospective employers." *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1369 (2003). Here, defendants have met their initial burden of showing that "the statement in question was made on a privileged occasion," namely between defendants and prospective employers who share a common business interest in plaintiff's work performance. *Taus*, 40 Cal. 4th at 721; *see, e.g.*, *Miglani v. Edwards Lifesciences, LLC*, No. 8:17-CV-00418-JLS-DFM, 2018 WL 6265007, at *7 (C.D. Cal. Jan. 8, 2018) ("California state law is settled that this common interest privilege

---

standing issues related to any anticipated future injury, the court will address the merits of defendants' arguments with respect to common interest privilege defense because plaintiff has arguably alleged a past injury suffered, even though those allegations are deficient in other respects.

protects supervisors who share information about employee conduct related to termination.").

The burden in this case thus shifts to plaintiff, who argues that the common-interest privilege does not apply here because "the defamatory statement was published with malice." (Doc. No. 9 at 5.)[10] Specifically, plaintiff alleges that defendant Putnam "recklessly and intentionally published [false statements] in a manner equaling malice" and "with hatred, ill will, and with an intent to . . . injure plaintiff in order to justify the illegal cruel actions of defendants." (Doc. No. 1, Compl. at ¶¶ 28, 32.) Plaintiff further alleges that defendants' "investigation" into the incident "was conducted in a manner designed to provide cover to terminate plaintiff due to his race, being an African-American." (*Id.* ¶ 29; *see also* Doc. No. 12 at 3.) These allegations, however, are far too conclusory to satisfy plaintiff's burden in this regard. This is because in order "[t]o defeat this conditional privilege, a plaintiff must specifically allege malice. A general allegation of malice will not suffice; plaintiff must allege detailed facts showing defendant's ill will towards him." *Robomatic, Inc., v. Vetco Offshore*, 225 Cal. App. 3d 270, 276 (1990).

Although decided in the context of a case alleging sexual harassment, the decision in *Judd v. Weinstein*, No. CV 18-5724 PSG (FFMx), 2018 WL 7448914, at *1 (C.D. Cal. Sept. 19, 2018) is instructive. There, actress Ashley Judd brought suit against movie producer Harvey Weinstein for defamation in connection with a prospective acting role. *Id.* at *1. Judd alleged that Weinstein invited her to a private meeting in a hotel room in late 1996 or early 1997 to discuss potential film roles, but when she arrived, he made several sexual advances towards her, which she rebuffed. *Id.* Judd also alleged that she had been seriously considered for a role in the in the Lord of the Rings film series but ended up not getting the role. *Id.* She later learned from the director of that film series that he had intended to cast her in the role, but was told in confidence by the film company that owned the film rights (and over which Weinstein had "plenary control") that Judd was "a nightmare to work with and [the director] should avoid [her] at all costs." *Id.* at

---

[10] "The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Cornell*, 18 Cal. App. 5th at 951 (internal quotation marks and citations omitted). "[M]alice focuses upon the defendant's state of mind, not his [or her] conduct." *Id.* (internal quotation marks and citations omitted).

*2. Judd claimed that Weinstein made this false statement about her "in retaliation for her earlier rejection of his sexual advances, intending to hinder her chances of being cast in the Lord of the Rings films." *Id.* Assuming these allegations to be true, the district court concluded that Judd had sufficiently alleged how Weinstein communicated the defamatory statement about her with ill will and malice. *Id.* at *8. In that case Judd had made specific and detailed allegations about the sexual harassment incident, Weinstein's publication of the defamatory statement to the director, and a causal link showing how Judd lost the acting role in the film series as a result.

In contrast, plaintiff here has alleged no facts showing the basis for his belief that defendant Putnam held racial animosity towards him, nor has he alleged facts showing a plausible causal link between the alleged racial animus and the publication of, as well as the investigation into, the January 26, 2018 incident. As noted above, plaintiff has also failed to allege facts identifying specifically to whom the alleged publication was made by defendant Putnam. In sum, the allegations of plaintiff's complaint are insufficient to overcome the applicability of the common-interest privilege.

Plaintiff's general allegation that he suffered racial discrimination or that the investigation into his conduct was motivated by racial animus is therefore insufficient. (Doc. No. 1, Compl. at ¶ 29.)

**C.    Possibility of Curing the Defects Identified Above**

When diversity jurisdiction is invoked based on fraudulent joinder, the Ninth Circuit has held, "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court *must* find that the joinder was proper and remand the case to the state court." *Grancare*, 889 F.3d at 548 (emphasis added); *accord Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445–46 (8th Cir. 2010); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009); *Travis v. Irby*, 326 F.3d 644, 647–49 (5th Cir. 2003); *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992); *see, e.g.*, *Moore v. Wells Fargo Bank*, No. 2:16-566 WBS CKD, 2016 WL 3091087, at *6 (E.D. Cal. June 2, 2016) (because the removing party fails to establish fraudulent joinder, the court "*must* grant plaintiff's motion and remand this case

to state court." (emphasis added)); *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1071 (C.D. Cal. 2012) (remanding a case because the removing party failed to establish fraudulent joinder and for other reasons). As the Eleventh Circuit has explained:

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," a result that is costly not just for the plaintiff, but for all the parties and for society when the case must be relitigated."

*Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

Despite this clear guidance and as noted at the outset, defendants conflate their burden to establish an insufficiently pled claim under Rule 12(b)(6) with the impossibility standard of the fraudulent joinder doctrine and, in doing so, have failed to address how it is impossible for plaintiff to cure the pleading deficiencies identified above. (*See* Section A, above.) Nonetheless, the court must consider this issue even though neither of the parties have chosen to address it.

Generally, "[c]ourts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). However, the rule of "liberality does not apply when amendment would be futile." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016). In considering whether amendment would be futile here, three factors weigh in favor of plaintiff. *See generally Heit v. Monsanto Co.*, No. 2:18-CV-01849 BJR, 2019 WL 549499, at *5 (W.D. Wash. Feb. 12, 2019) ("Ninth Circuit law is clear: a federal court is to find fraudulent joinder only under highly limited circumstances, and resolve any doubts in favor of remanding the action to state court."). First, it is plaintiff's original complaint that is pending before the court and plaintiff has sufficiently alleged the element of falsity in his defamation claim. Thus, it is difficult to rule out the possibility that plaintiff could cure the identified defects in his complaint. Of course, it is also common to grant a plaintiff leave to amend his original complaint. Although plaintiff fails to propose any new allegations that would cure the pleading defects noted above, the existing allegations of the complaint—albeit conclusory—do not foreclose that possibility.

For instance, plaintiff alleges that the investigation into his conduct was fabricated and motivated by racial animus, and that thereafter defendant Putnam published—or plaintiff was coerced into publishing—false statements about plaintiff's termination with malice to third parties outside of the workplace who had "no need to know and who made no inquiry" about plaintiff's employment with defendants. (Doc. No. 1, Compl. at ¶¶ 19, 21, 24, 28-29.) If these overarching assertions are supported by additional and more detailed factual allegations, they may be sufficient to constitute a cognizable defamation claim and escape the reach of the common-interest privilege. *See Mireles*, 845 F. Supp. 2d at 1062 ("Because courts must resolve all doubts against removal, a court determining whether joinder is fraudulent must resolve all material ambiguities in state law in [the] plaintiff's favor." (internal quotation marks omitted)); *see also Hamilton Materials*, 494 F.3d at 1206 (defendants must establish fraudulent joinder "by clear and convincing evidence").

The court therefore concludes at this early stage in the litigation that it is possible plaintiff may be able to cure the pleading defects identified by the court above. *See GranCare*, 889 F.3d at 549 (noting that the Ninth Circuit has "declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal"). The court also finds that defendants have failed to meet their heavy burden of establishing diversity jurisdiction through fraudulent joinder. *See, e.g.*, *Salgado-Lopez v. Ford Motor Co.*, 2020 WL 564248, at *3 (N.D. Cal. Feb. 5, 2020) (remanding the case because the defendants fail to meet their burden of establishing fraudulent joinder because "[p]laintiff could allege tolling of the statute of limitations for his implied warranty claim"); *Powell v. Ford Motor Co.*, No. 19-CV-04537-BLF, 2019 WL 7165922, at *4 (N.D. Cal. Dec. 16, 2019) (holding that while plaintiff's claim for breach of implied warranty of merchantability was time barred on its face, the removing parties had "failed to meet their heavy burden of showing that [the plaintiff] cannot possibly amend their Complaint to satisfactorily invoke a viable tolling theory," and that the case therefore had to be remanded); *Garey v. Abbott Labs.*, No. CV 19-7777 DSF (SKX), 2019 WL 6875342, at *5 (C.D. Cal. Dec. 16, 2019) (holding that although "the Complaint as it stands provides minimal factual allegations linking the alleged

negligence to Mr. Garey's death," fraudulent joinder had not been established and the case was therefore to be remanded); *Briseno v. Mitsubishi Caterpillar Forklift Am., Inc.*, No. 18CV2087-MMA (JLB), 2018 WL 6303737, at *6 (S.D. Cal. Dec. 3, 2018) (holding that the court "cannot find at this early stage of the litigation that there is 'no possibility' Plaintiff can establish a negligence cause of action against Defendant," and that the case would therefore be remanded); *Hernandez v. Ignite Rest. Grp., Inc.*, 917 F. Supp. 2d 1086, 1092 (E.D. Cal. 2013) ("Since Ignite has not met its heavy burden of demonstrating that Alton is a sham defendant, no complete diversity exists between the parties to this litigation and this action *must* be remanded." (emphasis added)).

Accordingly, for the reasons explained above, this case must be remanded to state court.

**D.    MOTION TO DISMISS FOR MISJOINDER**

In addition to raising the insufficiency of plaintiff's defamation claim, defendants also move the court to dismiss defendant Putnam from this action as a misjoined party pursuant to Federal Rule of Civil Procedure 21.[11]  However, the court is unable to determine at this early stage of the litigation that defendant Putnam is a dispensable party and therefore declines to exercise any discretion it may have to drop him as a party to this action.  *See, e.g.*, *Magana v. Ford Motor Co.*, No. 19-CV-04347-BLF, 2019 WL 7165920, at *5 (N.D. Cal. Dec. 16, 2019) (declining to exercise discretion under Rule 21 to drop an allegedly misjoined defendant from the suit).

**CONCLUSION**

Because the court has found that there is no fraudulent joinder, it "*must* find that the joinder was proper and remand the case to the state court." *Grancare*, 889 F.3d at 548 (emphasis added).  Here, plaintiff is resisting this court's jurisdiction and does not wish to dismiss his defamation claim against defendant Putnam.  Accordingly, plaintiff's motion to remand (Doc. No. 9) is granted and defendants' motion to dismiss (Doc. No. 4) is denied as moot.  The clerk of

---

[11] Rule 21 gives courts the "discretion to dismiss [a party] from the suit in order to perfect diversity jurisdiction, provided that she is not an indispensable party under Rule 19." *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1057 (9th Cir. 2016) (alteration in original).

19

the court is ordered to close this case and remand back to the Fresno County Superior Court.

IT IS SO ORDERED.

Dated: **March 11, 2020**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE